# EXHIBIT A

# CIRCUIT COURT SUIT

**IN THE CIRCUIT COURT FOR BLOUNT COUNTY, TENNESSEE**
**FIFTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| **COOK BROS CONSTRUCTION, LLC,**<br>**Plaintiff,**<br>v.<br>**FRANKENMUTH MUTUAL INSURANCE COMPANY,**<br>**Defendant.** | FILED<br>AUG 25 2026<br>10:45AM pdavis<br>CIRCUIT COURT CLERK | **No.** L-22176<br>**JURY DEMAND** |

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BAD FAITH REFUSAL TO PAY, AND STATUTORY DAMAGES UNDER T.C.A. § 56-7-105**

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE**

Plaintiff Cook Bros Construction, LLC, by and through undersigned counsel, brings this action against Defendant Frankenmuth Mutual Insurance Company and states as follows:

## I. PARTIES

1. Plaintiff Cook Bros. Construction, LLC ("Cook Bros") is a Tennessee limited liability company with its principal place of business at 3571 Louisville Rd, Louisville, TN 37777, Blount County, Tennessee. Cook Bros is engaged in the business of residential construction and operates as a general contractor in Tennessee.

2. Defendant Frankenmuth Mutual Insurance Company (NAIC CoCode: 13986) ("Frankenmuth") is a foreign insurance company organized and existing under the laws of the State of Michigan, with its principal office located at One Mutual Avenue, Frankenmuth, Michigan 48787. At all times relevant hereto, Frankenmuth was licensed to conduct the business of insurance in the State of Tennessee and was doing business in Tennessee. Frankenmuth may be served with process through the Commissioner of Commerce and Insurance of the State of Tennessee pursuant to T.C.A. § 56-2-504 and T.C.A. § 56-2-506.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to T.C.A. § 16-10-101, which vests the Circuit Courts of Tennessee with original jurisdiction of all civil actions at law, and the amount in controversy exceeds the jurisdictional threshold of this Court. This Court has personal jurisdiction over Frankenmuth because



DEFENDANT'S COPY

Frankenmuth is licensed to transact and does transact the business of insurance in Tennessee, issued the Policy at issue in Tennessee, and the acts and omissions giving rise to this action occurred in Tennessee.

4. This Court has jurisdiction to grant declaratory relief pursuant to the Tennessee Declaratory Judgment Act, T.C.A. §§ 29-14-101 *et seq.* An actual and justiciable controversy exists between the parties regarding their respective rights and obligations under the Policy described herein.

5. Venue is proper in Blount County, Tennessee pursuant to T.C.A. §§ 20-4-101 and 20-4-104. A substantial part of the events and omissions giving rise to the claims alleged herein occurred in Blount County, and Cook Bros maintains its principal office in Blount County. In addition, all thirty-one (31) residential properties at issue, and substantially all of the conduct giving rise to the Loss and resulting damages, are located within Blount County and the adjacent counties comprising this judicial district.

## III. FACTUAL ALLEGATIONS

### A. The Insurance Policy

6. At all times relevant hereto, Frankenmuth issued and maintained a Commercial General Liability ("CGL") insurance policy to Cook Bros, designated as Policy No. 6647857 (the "Policy"), in effect during the period encompassing the loss at issue. A true and correct copy of the Policy is attached hereto as Exhibit A.

7. Under the insuring agreement of the Policy, Frankenmuth agreed to pay those sums that Cook Bros becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" during the policy period.

8. In connection with underwriting the Policy, Frankenmuth assigned Cook Bros the ISO classification code 91580 — designated as an "Executive Supervisors/Executive Superintendents" classification — reflecting that Cook Bros operates as a general contractor performing executive supervision of construction operations rather than direct hands-on construction work. This classification was assigned by Frankenmuth's underwriters after evaluating Cook Bros's business operations; it was not selected by Cook Bros.

9. ISO classification code 91580 is a "plus sign" or "dagger" classification subject to Rule 25.F.1. of the ISO Commercial Lines Manual, which carries specific coverage implications under the Policy. Under Cook Bros's 91580 classification, claims for products and completed operations arising from Cook Bros's executive supervisory operations are included in the Policy's Premises/Operations coverage subject to the Policy's General Aggregate Limit, and are therefore expressly excluded from the Policy's products-completed operations hazard definition. Accordingly, such claims are not subject to Policy's exclusions, which incorporate the products-completed operations hazard definition, including the "Your Work" exclusion.

10. Under the Policy's subcontractor exception to the "Your Work" exclusion (Section I.2.l), property damage to work performed by a subcontractor on Cook Bros's behalf is not excluded from coverage.

11. The Policy also includes Endorsement 18198 (11 19), the "Your Work" Coverage Extension, which grants coverage for property damage to the insured's own work. To the extent Frankenmuth contends that Endorsement 18198 or any "defective or faulty work" carve-out within it limits coverage, Cook Bros avers that Endorsement 18198 is a coverage-expanding endorsement that cannot be construed to subtract coverage that the Policy's base subcontractor exception to the "Your Work" exclusion otherwise preserves, as recognized in *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn. 2007). In the alternative, any "defective or faulty work" carve-out applies only to the defective work itself and not to the resulting property damage to other, non-defective components caused by the defective work, which remains covered.

**B. The Loss**

12. On or about February 12, 2025, Cook Bros discovered that a flooring subcontractor had omitted a required subflooring vapor barrier during the installation of luxury vinyl plank flooring in residential homes constructed by Cook Bros (the "Loss").

13. The flooring subcontractor was E&M Flooring (Elvira Ramos Lopez, d/b/a E&M Flooring Service Plus), a subcontractor contractually retained by Cook Bros and not an employee of Cook Bros. E&M performed the flooring work pursuant to an executed Statement of Work and Trade Partner Agreement dated June 11, 2022, and



Case 3:26-cv-00485-TAV-DCP Document 1-1 Filed 10/02/26 Page 4 of 14 PageID #: 7

the omission of the required vapor barrier occurred while E&M was performing its scope of work under that agreement on Cook Bros's behalf.

14. The omission of the vapor barrier caused physical injury to tangible property — specifically, to the luxury vinyl plank flooring installed above the missing barrier and to other finished surfaces, fixtures, and components within the affected homes — in thirty-one (31) residential properties.

15. The resulting property damage at each affected property included, without limitation, the buckling, shrinkage, and physical injury to finished luxury vinyl plank (LVP) flooring requiring its removal and reinstallation; replacement of baseboards and shoe molding; paint and touch-up of finished wall surfaces; refinishing of stairwork; the removal and reset of plumbing fixtures, including toilets; the disconnection and reconnection of appliances; and pack-and-move services to relocate furniture and furnishings during remediation — all of which required remediation extending well beyond the mere replacement of the missing vapor barrier itself.

16. Cook Bros's flooring subcontractor's omission of the vapor barrier was an unforeseen and unexpected event — an "occurrence" — from the perspective of Cook Bros. Cook Bros, having contracted with and relied upon its subcontractor to properly install the vapor barrier, could not have foreseen that the subcontractor would omit the required barrier or that the omission would cause the resulting physical damage to the finished homes.

17. Cook Bros timely submitted a claim to Frankenmuth under the Policy for the property damage described herein (Claim No. 000200314923-653).

18. As of January 7, 2026, Cook Bros had expended $140,916.19 in documented remediation costs across the thirty (30) affected properties then identified. Cook Bros has since identified an additional affected residence located at 102 Gadusi Circle, at which Cook Bros has expended $29,726.00 in remediation costs arising from the same subcontractor's omission of the required vapor barrier, bringing the total number of affected properties to thirty-one (31) and Cook Bros's documented remediation expenditures to not less than $170,642.19.

19. The total projected and committed remediation cost across all thirty-one (31) affected properties is not less than $597,249.16, representing Cook Bros's legally enforceable warranty obligations and remediation commitments to its homeowner customers.

20. The damages alleged herein are continuing in nature and are not final. The line-item damage spreadsheet enclosed with Cook Bros's February 20, 2026 demand letter reflected actual, documented costs for those residences at which remediation had already been completed and, for the remaining residences, estimates prepared at or near the time the claim was first submitted to Frankenmuth. Because of increases in the cost of flooring materials and labor occurring during the period Frankenmuth has withheld payment, the costs Cook Bros is actually incurring as remediation proceeds are exceeding those earlier estimates. Cook Bros's investigation also remains ongoing, and additional affected residences may yet be identified, as the subsequent discovery of the residence at 102 Gadusi Circle demonstrates. Cook Bros therefore pleads its damages in an amount not less than $597,249.16, and expressly avers that its damages are subject to change and to increase through the date of trial. Cook Bros reserves the right to prove at trial the full amount of remediation costs actually and reasonably incurred, together with all such costs reasonably certain to be incurred, in accordance with proof.

**C. Frankenmuth's Pattern of Coverage Denials**

21. Frankenmuth denied coverage for the Loss on multiple occasions, each time advancing a materially different legal theory. This shifting pattern of denial demonstrates that Frankenmuth's claims handling was not the product of good faith evaluation of the Policy and applicable law, but rather a *post hoc* search for justifications to support a predetermined denial.

22. **First Denial — March 17, 2025.** Frankenmuth's Senior Claims Adjuster Edward Sanchez denied coverage based on the Policy's "Your Work" and "Your Product" exclusions, while simultaneously and contradictorily acknowledging that "there may be coverage for ensuing damages to property you were not hired to work on." This letter offered no coherent legal analysis and failed entirely to address Cook Bros's operations under ISO classification 91580.

23. **Second Denial — June 2, 2025.** Frankenmuth's Senior Claims Adjuster Timothy Hayden pivoted to an entirely different theory: that Cook Bros's damages did not

constitute "property damage" under the Policy because "defective or faulty work is not included within the definition of 'property damage.'" This assertion had no textual support in the Policy's actual definition of "property damage" — "physical injury to tangible property" — which Mr. Hayden's own letter quoted immediately before making the assertion. The letter also quoted the Policy's insuring agreement, Exclusions a, b, j, k, l, and m, Endorsement 18198's "Your Work" Coverage Extension, and the corresponding Commercial Liability Umbrella and Errors & Omissions provisions, but never explained which, if any, of these exclusions Frankenmuth contended independently barred coverage, leaving Cook Bros to speculate as to the actual basis for denial. This letter again failed to address the 91580 classification.

24. **Third Denial — October 2, 2025.** Through its retained coverage counsel Parks T. Chastain of Brewer Krause Brooks Chastain & Meisner PLLC, Frankenmuth advanced a third, entirely different coverage theory: that under Tennessee law, "damages to remedy defective workmanship" do not constitute "property damage" under the insuring agreement and that "[t]here is no need really even to address the exclusions." This was a complete reversal from the prior two denial letters, which had relied upon exclusions as their primary basis for denial. This letter again failed to address the 91580 classification.

25. **Fourth Denial — March 26, 2026.** Through new coverage counsel E. Jason Ferrell of the Ferrell Law Group, Frankenmuth maintained its coverage denial and, for the first time, asserted that Cook Bros had breached the Policy by assuming obligations and incurring expenses without Frankenmuth's prior consent. This letter again failed entirely to address the 91580 classification argument Cook Bros had raised in every communication since September 2025.

26. Across all four denial letters spanning over one year, Frankenmuth never once addressed Cook Bros's independently dispositive argument that ISO classification 91580 places Cook Bros's executive supervisory operations within the Policy's Premises/Operations coverage and entirely outside the exclusions upon which Frankenmuth relied.

27. To the extent Frankenmuth asserts the Policy's no-voluntary-payment or consent-to-incur-expense condition (Section IV.2.d) as a basis for denial — as it did for the first

time in its March 26, 2026 letter — Frankenmuth waived, and is estopped from asserting, that condition by reason of its repeated and unconditional denial of all coverage. An insurer that flatly denies coverage cannot simultaneously enforce policy conditions requiring its consent or cooperation. See *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). Moreover, Cook Bros promptly notified Frankenmuth of the Loss, Frankenmuth denied coverage at multiple points, and ongoing remediation was necessary to prevent further damage and to satisfy Cook Bros's warranty obligations to its homeowner customers, leaving Cook Bros no reasonable alternative.

**D. Cook Bros's Formal Pre-Suit Demand**

28. By letter dated February 20, 2026, attached hereto as Exhibit B, Cook Bros's counsel David S. Humphreys made a formal written demand upon Frankenmuth, through its coverage counsel Parks T. Chastain, demanding that Frankenmuth: (a) withdraw its coverage denial; (b) accept coverage for the Loss and any similar future claims; and (c) pay all damages arising from the thirty affected properties in the total amount of $567,523.16. The February 20, 2026 demand letter enclosed a line-item damage spreadsheet itemizing, for each affected home, the categories of resulting property damage described in Paragraph 15 above.

29. The February 20, 2026 demand letter explicitly invoked T.C.A. § 56-7-105 and notified Frankenmuth that Cook Bros would pursue all available legal remedies, including the statutory bad faith penalty under T.C.A. § 56-7-105, if Frankenmuth failed to reverse its coverage denial within fifteen business days.

30. By letter dated March 26, 2026, attached hereto as Exhibit C, Frankenmuth, through E. Jason Ferrell, explicitly refused to pay the Loss and maintained its denial of coverage in full.

31. Frankenmuth's March 26, 2026 refusal constituted an unequivocal and explicit refusal to pay Cook Bros's formal demand prior to the expiration of sixty (60) days, thereby satisfying all prerequisites to the institution of this action under T.C.A. § 56-7-105.

## IV. CAUSES OF ACTION

### Count I — Declaratory Judgment

(T.C.A. §§ 29-14-101 *et seq.*)

32. Cook Bros incorporates by reference all preceding paragraphs as if fully set forth herein.

33. An actual, present, and justiciable controversy exists between Cook Bros and Frankenmuth concerning their respective rights and obligations under the Policy with respect to the flooring damage claims described herein and any similar future claims arising from the same subcontractor omission.

34. Cook Bros contends, and Frankenmuth denies, that:

a. The physical damage to luxury vinyl plank flooring, subflooring, finished surfaces, fixtures, and other tangible property in the thirty-one (31) affected homes caused by the subcontractor's omission of the required vapor barrier constitutes "property damage" within the meaning of the Policy's insuring agreement, as that term is construed under *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn. 2007);

b. The subcontractor's omission of the required vapor barrier constitutes an "occurrence" within the meaning of the Policy's insuring agreement, as Cook Bros could not have foreseen that its subcontractor would omit the vapor barrier or that such omission would cause resulting physical damage to the finished homes;

c. The Policy's subcontractor exception to the "Your Work" exclusion preserves coverage for property damage arising from work performed by Cook Bros's flooring subcontractor on Cook Bros's behalf, and Endorsement 18198 cannot be construed to subtract that coverage;

d. Cook Bros's operations under ISO classification 91580 fall within the Policy's Premises/Operations coverage, not the products-completed operations hazard, such that exclusions incorporating the products-completed operations hazard definition do not apply to claims arising from Cook Bros's executive supervisory operations; and

e. Frankenmuth is obligated under the Policy to provide coverage for the Loss and for any future claims arising from substantially similar circumstances — specifically, property damage to residential flooring and related finished

surfaces caused by the same subcontractor's omission of the required vapor barrier — at properties constructed by Cook Bros.

35. A declaratory judgment establishing Frankenmuth's coverage obligations will resolve the parties' dispute, eliminate the need for future piecemeal litigation over the same coverage questions as additional remediation claims are made, and provide Cook Bros the certainty needed to manage its ongoing remediation obligations across the thirty-one (31) affected properties and any future similarly situated properties.

36. Cook Bros respectfully requests that this Court enter a declaratory judgment establishing that the flooring damage claims described herein are covered under Frankenmuth Policy No. 6647857, and that Frankenmuth is obligated to provide coverage for such claims arising from substantially similar circumstances under the same policy.

**Count II — Breach of Contract**

37. Cook Bros incorporates by reference all preceding paragraphs as if fully set forth herein.

38. The Policy constitutes a valid and enforceable contract between Cook Bros and Frankenmuth.

39. Cook Bros has performed all conditions, covenants, and obligations required under the Policy, including paying premiums and timely submitting its claim.

40. The Loss constitutes "property damage" caused by an "occurrence" within the meaning of the Policy's insuring agreement, as construed under Tennessee law, including the Tennessee Supreme Court's controlling decision in *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn. 2007). The Loss is not excluded from coverage under any applicable policy exclusion.

41. Independently, Cook Bros's operations under ISO classification 91580 fall under the Policy's Premises/Operations coverage, not the products-completed operations hazard, such that the exclusions Frankenmuth has invoked do not apply to claims arising from Cook Bros's executive supervisory operations, including its supervision of the flooring subcontractor at issue.

42. Frankenmuth has materially breached the Policy by wrongfully denying Cook Bros's claim and refusing to pay the covered property damage loss, which as of the filing of this Complaint totals not less than $597,249.16.

43. As a direct and proximate result of Frankenmuth's breach, Cook Bros has suffered damages in an amount not less than $597,249.16, which amount continues to increase as remediation proceeds, plus interest, costs, and such other damages as may be proven at trial.

**Count III — Bad Faith Refusal to Pay Under T.C.A. § 56-7-105**

44. Cook Bros incorporates by reference all preceding paragraphs as if fully set forth herein.

45. This claim is asserted pursuant to T.C.A. § 56-7-105, which imposes additional liability upon insurance companies that refuse to pay a loss within sixty (60) days after a formal demand, where such refusal was not in good faith.

46. The Policy had matured and was due and payable upon the occurrence of the covered Loss on February 12, 2025, and thereafter upon the incurrence of remediation obligations by Cook Bros.

47. Cook Bros made a formal written demand for payment by letter dated February 20, 2026, which: (a) explicitly asserted Cook Bros's legal right to payment under the Policy and identified the Policy number and Claim number; (b) specified the total amount of damages claimed ($567,523.16); and (c) expressly notified Frankenmuth of Cook Bros's intent to pursue the statutory bad faith penalty under T.C.A. § 56-7-105 if Frankenmuth failed to pay.

48. Frankenmuth refused to pay the Loss by letter dated March 26, 2026, an explicit refusal within the sixty (60) day period following the formal demand, entitling Cook Bros to file suit immediately without awaiting expiration of the sixty-day period.

49. Frankenmuth's refusal to pay was not in good faith, as evidenced by, without limitation, the following:

a. Frankenmuth advanced three materially inconsistent and contradictory coverage theories across four denial letters, demonstrating that its denials were

*post hoc* justifications for a predetermined decision to deny the claim rather than the product of good faith coverage analysis;

b. Frankenmuth repeatedly and entirely failed to address Cook Bros's ISO classification 91580 argument — a substantive and independently dispositive coverage argument — in any of its four denial letters, despite Cook Bros raising it in every communication since September 2025;

c. Frankenmuth mischaracterized the controlling Tennessee Supreme Court precedent, *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn. 2007), by asserting that the case categorically excludes "damages to remedy defective workmanship" from the definition of "property damage," when in fact *Travelers* expressly held that damage caused by a subcontractor's defective workmanship — including resulting damage beyond the defective component itself — constitutes covered "property damage" and an "occurrence" under a CGL policy's insuring agreement;

d. Frankenmuth's former coverage counsel Parks T. Chastain acknowledged in his October 2, 2025 letter that he personally represented the insured's subcontractor in *Travelers Indemnity*, thereby demonstrating actual knowledge of the decision's scope and holdings, yet Frankenmuth nonetheless mischaracterized that decision in its coverage denial letters;

e. Frankenmuth invoked a consent-to-payment clause in its March 26, 2026 letter as an additional basis for denying coverage for the first time and only after coverage had already been denied, despite having repeatedly and explicitly disclaimed all coverage obligations under the Policy — an insurer that disclaims all obligations under a policy cannot simultaneously enforce the insured's affirmative policy conditions, and the late assertion of that condition is itself further evidence of bad faith; and

f. Frankenmuth's pattern of shifting coverage theories, selective engagement with Cook Bros's arguments, and mischaracterization of controlling authority evidences claims handling designed to minimize its liability at Cook Bros's expense rather than to conduct a good faith evaluation of coverage and proper payment of covered claims.

50. Frankenmuth's bad faith refusal to pay has inflicted additional expense, loss, and injury upon Cook Bros, including attorneys' fees and costs incurred in pursuing this action, the cost of remediation undertaken without the benefit of insurance proceeds, lost business opportunities, and other consequential losses.

51. Pursuant to T.C.A. § 56-7-105(a), Cook Bros is entitled to recover, in addition to the covered loss and interest thereon, a sum not exceeding twenty-five percent (25%) of the liability for the loss — which loss totals not less than $597,249.16 and continues to increase — as measured by the additional expense, loss, and injury, including attorneys' fees, inflicted upon Cook Bros by Frankenmuth's bad faith refusal to pay.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cook Bros Construction, LLC respectfully demands judgment against Defendant Frankenmuth Mutual Insurance Company as follows:

A. On Count I (Declaratory Judgment): a declaration that the flooring damage claims arising from the subcontractor's omission of the required vapor barrier constitute covered "property damage" caused by an "occurrence" under Frankenmuth Policy No. 6647857; that Frankenmuth is obligated to provide coverage for the Loss described herein; and that Frankenmuth is obligated to provide coverage for any future claims arising from substantially similar circumstances under the same policy;

B. On Count II (Breach of Contract): compensatory damages in an amount not less than $597,249.16, representing the remediation costs for which Frankenmuth wrongfully denied coverage as of the filing of this Complaint, or such greater amount as is established by the proof at trial, plus pre-judgment and post-judgment interest at the applicable statutory rate;

C. On Count III (Bad Faith Under T.C.A. § 56-7-105): statutory damages in an amount not to exceed twenty-five percent (25%) of the covered loss — which loss totals not less than $597,249.16 as of the filing of this Complaint and continues to increase — as measured by the additional expense, loss, and injury, including attorneys' fees, inflicted upon Cook Bros by Frankenmuth's bad faith refusal to pay;

D. Costs of this action; and attorneys' fees to the extent includable within the statutory damages awarded under T.C.A. § 56-7-105(a) as part of the additional expense, loss, and injury inflicted upon Cook Bros by Frankenmuth's bad faith refusal to pay;

E. Pre-judgment interest on all amounts found due and owing from the date of the formal demand;

F. Such other and further relief as this Court deems just and proper.

## VI. JURY DEMAND

Pursuant to Article I, Section 6 of the Constitution of the State of Tennessee and Rule 38 of the Tennessee Rules of Civil Procedure, Plaintiff Cook Bros Construction, LLC hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**COOK BROS CONSTRUCTION, LLC**

By: ______________________

Dustin E. Sharp (TN Bar No. 31881)
**STOKES, WILLIAMS, SHARP, COPE & MANN, P.C.**
920 Volunteer Landing Lane, Suite 100
Knoxville, TN 37915
Telephone: (865) 544-3833
Facsimile: (865) 544-1849
Email: dusty@stokeswilliams.com
*Counsel for Plaintiff Cook Bros Construction, LLC*

David S. Humphreys (Miss. Bar No. 100085)
**MUSGROVE HUMPHREYS PLLC**
2064 Main Street, Building 1C
Madison, MS 39110
Telephone: (601) 607-8237
Email: David@mwhlawoffice.com
*(Application for Admission Pro Hac Vice Forthcoming Pursuant to Tenn. Sup. Ct. R. 19)*